N THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

R. EDWARD ROBERTSON, SANDY W.
THOMPSON, BARON BRUMLEY AND
JUDE BACA,

       Plaintiffs,                              Civ. No. 02-1303 MV/DJS

vs.

CITY OF ALBUQUERQUE and the CITY
COUNCIL AS ITS FINAL VOTING
AUTHORITY,

       Defendants,

and

WESTSIDE EQUESTRIAN
ASSOCIATION, INC., and THE TAYLOR
RANCH NEIGHBORHOOD
ASSOCIATION,

       Interested Parties.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss Plaintiffs' Constitutional Claims, filed August 15, 2005, **[Doc. No. 34]**, and Plaintiff's Motion to Remand to State Court on the Basis of Improvident Removal, filed September 30, 2005, **[Doc. No. 39]**.  The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that both motions must be denied because the Court does not have jurisdiction over this matter.

## BACKGROUND

This case arises from Defendant Albuquerque City Council's denial of Plaintiffs'

application for a zone map amendment.[1]  In 2001, Plaintiffs purchased a seven acre tract of land in Albuquerque that was zoned as a special use for an equestrian center.  At the time, the tract of land was leased to the Westside Equestrian Center ("WEC") as a private equestrian club for one dollar per year.  When the WEC lease expired, WEC was given the opportunity to either purchase or lease the land at market rates.  WEC was unable to raise the money necessary to purchase or lease the land and Plaintiffs filed a zone map amendment application seeking to have the zoning changed to permit development of the property.

According to Plaintiffs, one of the City Councilors promised the Board of Directors of the WEC that if the zone map amendment was approved by the Environmental Planning Committee ("EPC"), the application would not proceed any further.  On April 18, 2002, the EPC granted Plaintiffs' application for a zone map amendment.  The Westside Equestrian Association appealed the EPC's approval of the zone map amendment to the City Council.

On August 5, 2002, the City Council reversed the zone map amendment approval.  On September 2, 2002, Plaintiffs filed a notice of appeal and civil rights complaint in the Second Judicial District Court, State of New Mexico.  Plaintiffs' Complaint contains two counts--Count I appeals the reversal of the zone map amendment and Count II asserts federal constitutional claims.  On October 16, 2002, Defendants removed the action to federal court on the grounds that this Court had original jurisdiction pursuant to 42 U.S.C. § 1983.  Shortly thereafter, the parties stipulated to remanding the appellate issues back to state court.  The federal claims were stayed pending resolution of the appellate issues.

---

[1] Most of the background information is undisputed.  Where any facts are disputed, however, the Court assumes all well-pleaded facts as true for purposes of a motion to dismiss.

On May 30, 2003, the parties entered a stipulation in the state court case remanding the matter back to the City Council.  On September 15, 2003, the City Council reversed the zone map amendment approval for the second time.

On September 8, 2004, the state court reversed the decision of the City Council and remanded the matter back to the City Council for reconsideration.  At this time, the City filed a Petition for Writ of Certiorari to the Court of Appeals.  The Court of Appeals denied the Writ of Certiorari and the City Council affirmed the grant of Plaintiffs' zone map amendment on February 7, 2005.

After the City Council affirmed the grant of Plaintiffs' zone map amendment, the stay of Plaintiffs' constitutional claims in this Court was lifted.  Defendants filed a motion to dismiss Plaintiffs' constitutional claims and Plaintiffs filed a motion to remand the case to state court.

## LEGAL STANDARD

In reviewing a defendant's Rule 12(b)(6) motion, the court assumes the veracity of the "well-pleaded factual allegations" in the complaint and draws all reasonable inferences in the plaintiff's favor.  *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987);  *see Zinermon v. Burch*, 494 U.S. 113, 118 (1990).  The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his/her claim.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The court may dismiss a case for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his theory of recovery that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that [he/she] has not alleged or that the defendants have violated the . . .

laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

## DISCUSSION

### I. Motion to Dismiss

Plaintiffs' Complaint alleges that Defendants' actions deprived Plaintiffs of substantive due process, procedural due process, and equal protection. Defendants hereby seek dismissal of all of Plaintiffs' constitutional claims.

#### A. Substantive Due Process Claim

While framed as a substantive due process claim, it is clear from Plaintiffs' Complaint, that Plaintiffs are asserting a takings claim. *See* Complaint at ¶ 38 (Defendants' actions "constitute a taking without paying just compensation and without affording Petitioners the substive [sic] and procedural protections of due process."). Since the Takings Clause provides an explicit textual source of constitutional protection against private takings, the Fifth Amendment (as incorporated by the Fourteenth), not the more generalized notion of substantive due process must be the guide in reviewing Plaintiffs' taking claim. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989) (when an explicit textual provision of the Constitution protects against the governmental conduct challenged by the plaintiff, plaintiff is precluded from making a more generalized substantive due process claim).

4

In *Williamson County Reg. Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 193-94, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court articulated a special ripeness doctrine for constitutional property rights claims that precludes federal courts from adjudicating land use disputes until: (1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation. It is undisputed that Plaintiffs have not exhausted their available state remedies for compensation and, as conceded by Plaintiffs, their takings claim is not ripe at this time.

**B. Procedural Due Process and Equal Protection Claims**

In addition to a takings claim, Plaintiffs allege Fourteenth Amendment violations of procedural due process and equal protection.[2] All of Plaintiffs' Fourteenth Amendment violations are based on Defendants' allegedly arbitrary and capricious rejection of Plaintiffs' requested zone map amendment. *See* Plaintiffs' Complaint at 47 ("The actions of the City of Albuquerque and the City Council are without reason or basis, and are so arbitrary, capricious, and unfounded that they have deprived Petitioners of substantive and procedural due process of law, and equal protection of the law.") .

Defendants assert that Plaintiffs' Fourteenth Amendment claims also are unripe. Specifically, Defendants argue that the property interest affected by the Fourteenth Amendment claims is the exact property interest affected by Plaintiffs' Fifth Amendment takings claim, namely

---

[2] While Plaintiffs' Complaint could be read to allege a substantive due process claim based on Defendants' alleged arbitrary decision on the zone map amendment, Plaintiffs have clarified in their response that their substantive due process claim is limited to a takings claim. *See* Plaintiffs' Response to City of Albuquerque's Motion to Dismiss Plaintiffs' Constitutional Claims at p. 5 (stating that Plaintiffs are making three constitutional claims--a takings claim, a procedural due process claim, and an equal protection claim).

the right to have the zone map amended so they could develop their property. Because the Fifth Amendment claim is unripe, Defendants assert that the Fourteenth Amendment claims, which are coextensive with the Fifth Amendment claims, are also unripe.

In response, Plaintiffs contend that the Fourteenth Amendment rights allegedly violated are not coextensive with the Fifth Amendment takings claim. They argue that Defendants' alleged violation of Plaintiffs' Fourteenth Amendment rights occurred independent from the alleged Fifth Amendment taking and involved rights distinct from Fifth Amendment rights. Consequently, Plaintiffs seek a different ripeness standard for the Fourteenth Amendment claims.

On several occasions, the Tenth Circuit has addressed under what circumstances a trial court confronted with an unripe takings claim should dismiss accompanying Fourteenth Amendment claims. Initially, in *Landmark Land Company of Oklahoma, Inc. v. Buchanan*, 874 F.2d 717 (10th Cir. 1989),[3] a land developer filed suit after the city failed to issue him certain building permits, asserting a takings claim, procedural and substantive due process claims, and an equal protection claim. The district court held that all of the developer's claims were unripe under *Williamson County* because a final determination had not been made at the local and state level. On appeal, the Tenth Circuit agreed that the takings claim was not ripe and that the *Williamson County* ripeness test applied with equal force to the substantive due process and equal protection claims. The Tenth Circuit held that the developer's procedural due process claim should not have been dismissed as unripe, however, because if the developer had a property interest in the permits, the city could not withhold them without affording him due process. The

---

[3] *Landmark* was abrogated on other grounds by *Federal Lands Legal Consortium ex rel. Robart Estate v. U.S.*, 195 F.3d 1190 (10th Cir. 1999).

6

Tenth Circuit then considered the procedural due process claim on the merits and determined that the process provided satisfied the requirements of the Fourteenth Amendment.

Next, in *Miller v. Campbell County*, 945 F.2d 348 (10th Cir. 1991), property owners from a condemned subdivision filed suit in federal court after the county declared their property uninhabitable. The property owners alleged Fifth Amendment takings and Fourteenth Amendment substantive and procedural due process violations. *Id*. at 350. The court held that the Fifth Amendment claim was unripe because the property owners had an inverse condemnation proceeding pending with the state. *Id*. at 352. As to the Fourteenth Amendment claims, the court determined that:

> Because the Just Compensation Clause of the Fifth Amendment imposes very specific obligations upon the government when it seeks to take private property, we are reluctant in the context of a factual situation that falls squarely within that clause to impose new and potentially inconsistent obligations upon parties under the substantive or procedural components of the Due Process Clause. It is appropriate in this case to subsume the more generalized Fourteenth Amendment due process protections within the more particularized protections of the Just Compensation Clause.

*Id*. (footnote omitted).

In short, the *Miller* court held that because the Fourteenth Amendment claims involved the exact property interest involved in the Fifth Amendment claim, the Fourteenth Amendment claims, like the Fifth Amendment claim, were unripe. Thus, after *Miller*, the lodestar for determining whether Fourteenth Amendment claims are unripe is whether the Fourteenth Amendment claims involve the exact property interest affected by the Fifth Amendment claim.

This question again confronted the Tenth Circuit in *J.B. Ranch, Inc. v. Grand County,* 958

F.2d 306 (10th Cir. 1992).[4] In *J.B. Ranch*, a ranch owner alleged a Fifth Amendment takings claim and a procedural due process claim after a county declared that roads within his ranch were open to public use. *Id*. at 307. The Tenth Circuit found that the takings claim had been properly dismissed on ripeness grounds because the ranch owner had not pursued just compensation remedies available under state law. *Id.* at 308-9. The Tenth Circuit recognized that under certain circumstances, due process rights may arise that are beyond the more particularized claim asserted pursuant to the Just Compensation Clause. The court found, however, that the procedural due process claim asserted in this case did not merit analysis distinct from the takings claim and dismissed it as unripe.

In *Rocky Mountain Materials & Asphalt, Inc. v. Board of County Commissioners of El Paso County*, 972 F.2d 309 (10th Cir. 1992), the Tenth Circuit refined the *Miller* analysis. In *Rocky Mountain Materials*, a mine owner alleged that the revocation of its mining permit constituted a Fifth Amendment taking and a Fourteenth Amendment due process violation. The Tenth Circuit, reviewing the trial court's dismissal of the takings claim as unripe, addressed under what circumstances a trial court confronted with an unripe takings claim should dismiss accompanying Fourteenth Amendment claims. Under the *Rocky Mountain Materials* analysis, if a landowner brings a takings claim together with Fourteenth Amendment claims and the takings

---

[4] *J.B. Ranch*, like the instant case, involved a takings claim that was not ripe because while a final decision had been made the landowner had not sought compensation. This is significant because it shows that the Tenth Circuit's analysis of the ripeness of constitutional claims accompanying a takings claim is not affected by the fact that a final decision has been made. Some courts apply only *Williamson County's* finality requirement, and not the compensation requirement, to constitutional claims accompanying a takings claim. *See, e.g., McKenzie v. City of White Hall*, 112 F.3d 313, 317 (8th Cir. 1997) ("Because the City's decisions to deny zoning and building permits absent surrender of the privacy buffer were final, the McKenzies' due process and equal protection claims are ripe.").

claim is unripe, the court will dismiss the Fourteenth Amendment claims if "[t]he property interest supporting the due process claim ... is exactly the same one that ... has resulted in the complete taking of ... property without just compensation." *Id.* at 311.  Applying this test, the court found that the property interest supporting the due process claim, the right to conduct mining activities on the land, was identical to the interest taken without just compensation. *Id.* Consequently, the takings and the due process claims were unripe. *Id.*

After *Rocky Mountain Materials*, the Tenth Circuit next addressed this issue in *Bateman v. City of West Bountiful*, 89 F.3d 704 (10th Cir. 1996).  In *Bateman*, the city filed a certificate of noncompliance indicating that Bateman's property was not in compliance with certain building code requirements.  Bateman, who was prevented from selling his property due to the certificate, filed suit in federal court asserting a Fifth Amendment takings claim as well as claims under the due process and equal protection clauses of the Fourteenth Amendment.  The trial court determined that the takings claim was not ripe and that the equal protection and due process claims also were not ripe because they rested upon the same facts as the takings claim.  The Tenth Circuit, citing *Rocky Mountain Materials*, *J.B. Ranch*, *Miller and Landmark*, affirmed on the grounds that the landowner's due process and equal protection claims were subsumed within the more particularized protections of the Takings Clause and were not ripe for review.

Most recently, in *Signature Properties International v. City of Edmond*, 310 F.3d 1258 (10th Cir. 2002), the Tenth Circuit specifically rejected a claim that *Williamson County* ripeness requirements should not be applied to a due process claim "based on arbitrary actions which by their nature are not akin to the steps involved in most land use regulation cases."  The Tenth Circuit stated that "this argument simply cannot be squared with our holding in *Landmark* that the

9

finality requirement for due process claims is the same as that for takings claims." *Id.* at 1268.

The Tenth Circuit wrote:

> Plaintiff builds its argument from the premise that its due process claim is different from a takings claim, highlighting language from the Supreme Court which seems to summarize the difference succinctly. In *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 722, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999), the Court distinguished the claim at issue from an ordinary takings claim by saying that the plaintiff developer's claim there was "not that the city had followed its zoning ordinances and policies but rather that it had not done so." We infer that plaintiff's position is that its substantive due process claim is ripe because it is based on arbitrary actions which by their nature are not akin to the steps involved in most land use regulation cases. Thus, where in the typical case the developer and the local authority may find themselves engaged in a process of give and take, as alternative plans are proposed and various regulatory factors are considered, in this case Edmond attempted, without sound basis and at least arguably improperly, to coerce plaintiff to upgrade the sewer. We infer that plaintiff is arguing that this type of municipal action is qualitatively different from the process involved in most land use regulation cases and that our application of the finality requirement should take this into account.
>
> Language in some cases has indicated that finality is quite different in the context of substantive due process claims such as plaintiff's. *See Eide v. Sarasota County*, 908 F.2d 716, 724 n. 13 (11th Cir.1990) ("a property owner's rights have been violated the moment the government acts in an arbitrary manner and ⋯ that arbitrary action is applied to the owner's property"). Nevertheless, we must reject this argument. First, the argument seems to prove too much because it would seem to emasculate the finality requirement entirely. Indeed, the quoted language from *Eide* is difficult to square with the actual holding of that case that the finality requirement for due process claims is, if not identical to that for takings claims, at least very similar to it. Moreover, this argument simply cannot be squared with our holding in *Landmark* that the finality requirement for due process claims is the same as that for takings claims.

*Signature Properties International*, 310 F.3d at 1267-68.

It is clear that under Tenth Circuit law, procedural due process, substantive due process, and equal protection claims that rest upon the same facts as a concomitant takings claim are subject to the same ripeness requirements as the underlying takings claim. The due process and equal protection claims that Plaintiffs assert here are that they were deprived of the use of their

property due to the Defendants' arbitrary failure to approve a zone map amendment. The property interest supporting the due process and equal protection claims is thus the right to have Plaintiffs' property rezoned. This alleged deprivation is exactly the same one that Plaintiffs assert has resulted in the taking of their property without just compensation in violation of the Fifth Amendment.[5]

Under Tenth Circuit law, this Court is compelled to apply *Williamson County*'s ripeness requirements to all claims based on the same property rights deprivation. Because Plaintiffs' takings claim subsumes their Fourteenth Amendment claims and the takings claim is unripe, Plaintiffs' Fourteenth Amendment claims similarly are unripe. Under these circumstances, Plaintiffs must first make use of the available state inverse condemnation remedies before its due process and equal protection claims may be considered ripe for determination.

If this case had been originally filed in federal court, Plaintiffs' claims would be dismissed without prejudice. A twist, however, arises from the fact that these claims were removed by Defendants from state court. Section 1447 provides that when a case has been removed from state court "[i]f at any time before final judgment it appears that the district lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447. The language of this section is mandatory-once the federal court determines that it lacks jurisdiction, it must remand the case back to the appropriate state court. *International Primate Protection League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 87-89, 111 S.Ct. 1700, 1709-10, 114 L.Ed.2d 134 (1991)

---

[5] The fact that these claims are coextensive is illustrated by Plaintiffs' Complaint, which lumps all of these claims into a single count based on the same predicate acts and generally asserts that "[a]s a result of the actions by the City of Albuquerque and the City Council, Petitioners have suffered temporary and permanent deprivations of . . . property rights secured against deprivation without just compensation."

11

(noting that literal words of § 1447(c) grant district court no discretion to dismiss matter).

Some circuits have recognized a "futility exception" to § 1447(c) that allows a district court to dismiss an action rather than remand it to the state court when remand would be futile because the state court also would lack jurisdiction over the matter. *See Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991) (ruling that dismissal was appropriate where remand was futile); *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 (5th Cir. 1990) (permitting dismissal where remand would be futile because federal court's determination that state court lacked jurisdiction bound state court). The Tenth Circuit, however, has expressly rejected this proposed exception in an unpublished opinion. *See Jepsen v. Texaco, Inc.*, 68 F.3d 483, 1995 WL 607630, at *3 (10th Cir.1995) (noting that Supreme Court expressly rejected futility exception in *International Primate*). Thus, even though the Court has found that all of Plaintiffs' claims are unripe, the Court is constrained to remand the case to state court rather than dismiss the claims.

## II. Motion to Remand Based on Improvident Removal

Plaintiffs have filed a motion seeking to remand the case to state court on the grounds of improvident removal. While not exactly a model of clarity, it appears that Plaintiffs are arguing that their takings claim should be remanded as improvidently removed and the remainder of their claims should be remanded with the takings claim as a matter of judicial economy. Given the Court's determination that this case must be remanded for lack of subject matter jurisdiction, Plaintiffs' motion is moot.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Plaintiffs' Constitutional Claims, filed August 15, 2005, **[Doc. No. 34]** is **DENIED** for lack of subject

matter jurisdiction.

**IT IS FURTHER ORDERED** that this matter is hereby remanded to the Second Judicial District Court, County of Bernalillo, State of New Mexico, on the grounds that this Court does not have subject matter jurisdiction because Plaintiffs' claims are not ripe.

**IT IS FINALLY ORDERED** that Plaintiff's Motion to Remand to State Court on the Basis of Improvident Removal, filed September 30, 2005, **[Doc. No. 39]**, is hereby **DENIED as moot.**

Dated this 14th day of March, 2006.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
Catherine F. Davis

Attorneys for City of Albuquerque:
Randy M. Autio
John S. Campbell